UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMC INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25 C 09850 |
| | ) | |
| EVANS & SONS BLACKTOP, INC., FLEM | ) | Judge Rebecca R. Pallmeyer |
| D. EVANS, DONNA L. EVANS, THE FLEM | ) | |
| DEAN EVANS & DONNA L. EVANS JOINT | ) | |
| TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Evans & Sons Blacktop, Inc. ("Evans & Sons"), Flem D. Evans ("Mr. Evans"), and Donna L. Evans ("Ms. Evans"), are in the business of asphalt paving. For over two decades, Plaintiff EMC Insurance Company ("EMC") issued surety bonds that guaranteed satisfactory performance of Defendants' contractual obligations with their customers. In the contract between EMC and Defendants, originally signed in 2002, Defendants agreed to indemnify EMC in the event of any claims from Defendants' customers. In 2025, Defendant The Flem Dean Evans & Donna L. Evans Joint Trust ("the Trust") agreed to serve as an additional indemnitor for EMC and became a party to the indemnification agreement. Since then, Defendants have defaulted on numerous construction projects, and EMC has paid claims in excess of $700,000. Pursuant to their contract, EMC brought this indemnity action seeking reimbursement for the amount paid. EMC has since moved for summary judgment. As explained below, this motion is granted.

## BACKGROUND

The facts laid out below are taken from the parties' respective Local Rule 56.1 statements.[1] As it must at summary judgment, the court draws all reasonable inferences in favor

---

[1] The court notes that Defendants' statement of material facts [23] is not compliant with Local Rule 56.1. That rule requires that a party "opposing a summary judgment motion" file a statement "of numbered paragraphs" that explicitly states whether that party admits or denies

of Defendants, the nonmoving party. *See Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1036 (7th Cir. 2021).

This case concerns a contractual dispute, arising under Illinois law, involving surety bonds. Some background: a surety bond is a three-party legal instrument common in the construction industry. By issuing these bonds, EMC (the "surety") agrees to pay Defendants' customers (the "obligees") in the event that Defendants breach their construction contracts. For obvious reasons, many parties that procure the services of construction companies request surety bonds to secure their contractors' obligations. *See generally Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, 926 F.3d 318, 321 (7th Cir. 2019) (providing additional background).

On December 23, 2002, EMC and three Defendants—Evans & Sons, Flem Evans, and Donna Evans—entered into an agreement entitled the "General Application and Agreement of Indemnity" (the "General Agreement"). (PSOF [19] ¶¶ 3, 10–11.) The General Agreement outlined the terms under which EMC would subsequently issue surety bonds over the next two decades. It provided, in part, that each signatory would "jointly and severally" "exonerate, indemnify, and keep indemnified [EMC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature." (Contract [1-2] at 2.) In addition, the Indemnitors agreed that in the event EMC incurred any losses or expenses, "an itemized statement thereof sworn to by an officer of the surety, or the voucher or vouchers of other evidence of such payment or compromise, shall be . . . evidence of the fact and amount of the liability of [the Indemnitors] under this Agreement." (PSOF [19] ¶ 8.)

Presumably due to concerns about Defendants' solvency, by March 2025, EMC sought additional security by asking that the Trust also indemnify EMC. On March 12, 2025, the Trust

---

the allegations in the opposing party's Local Rule 56.1 statement. *See* LR 56.1(b)(2), (e) ("Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact."). Defendants have submitted a short statement that appears to be a statement of additional material facts contemplated by Local Rule 56.1(b)(3), but have failed to submit a Local Rule 56.1(b)(2) response that addresses Defendants' factual assertions.

executed an "Agreement of Indemnity Rider" (the "Rider").  (*Id.* ¶ 15.)  In the Rider, the Trust agreed to join the terms of the 2002 agreement; it stated, "for consideration," that it would "become a party to the [General Agreement]" and, thus, also indemnify EMC in the event that Defendants breached their construction contracts and EMC had to pay out the bonds.[2]  (*Id.* ¶¶ 14–15.)  A copy of the Rider is in the record (Rider [19-1] at 8–9).  It bears the signature of Flem Dean Evans, "individually and as co-trustee," and is dated March 18, 2025.  His signature was notarized by Michele Zieche, an Illinois notary, who affixed her seal to the document, as shown in the photograph below:

(*Id.* at 9.)  The Rider also bears the signature of Donna Evans, "individually and as co-trustee," which was also dated on March 18, 2025, and was notarized by Ms. Zieche.  (*See id.* at 9.)

---

[2]	The beneficiaries of this trust are not named in the record.  It is thus unclear whether the trustees' decision to indemnify EMC was in the best interest of the trust's beneficiaries.

3

2. Business Entity ──────→ The Fleam Dean Evans & Donna L. Evans Joint Trust Dated October 16, 2018

By: _Donna L Evans_
(Name & Title) Donna L. Evans, Individually and as Co-Trustee

ACKNOWLEDGMENT

STATE OF Illinois
COUNTY OF DuPAGE ) ss:

On _3-18-26_ , before me, MICHELE ZIECHE
(Date)                        (Notary)
personally appeared Donna L. Evans _____ who proved to me on the basis of
(Name of Signer)
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument (an Agreement of Indemnity) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of this state that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. _Michele Zieche_
(Signature of Notary)

My commission expires on _6-19-26_ .

7097

OFFICIAL SEAL
MICHELE ZIECHE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JUNE 19, 2026

Page 2 of 4 2

(*See id.*)

In their summary judgment briefing, Defendants dispute the validity of this document. The only piece of evidence they submit calling its validity into question, however, is a single affidavit from Mr. Evans. In his affidavit, Mr. Evans claims that he does not recall signing the Rider, and states that the "agreement is not familiar to me, and I had not previously seen it until the motion for summary judgment." (Evans Aff. [23-1] ¶ 3.) He also claims that "on or about March 18, 2025," he and his spouse were at their home in Lehani, Hawaii, not in DuPage County. (*Id.* ¶ 4.) He further claims he had "no discussion with anyone from EMC about binding the trust to the indemnity agreement," and does "not recall seeing the [Rider] until it was presented to me by my attorney in the course of this litigation." (*Id.* ¶¶ 5–6.) Notably, Mr. Evans's affidavit does not allege unequivocally that his signature was forged, nor does he claim affirmatively that he never signed the document.[3] Nor does the record include any statement or affidavit from Defendant Donna Evans, who also signed the document in her capacity as co-trustee. The court assumes that Ms. Evans does not dispute the validity of her signature.

---

[3] The court notes that the signature on Mr. Evans's affidavit (Evans Aff. [23-1] at 2), as well as his signature on the General Application and Agreement of Indemnity ([1-2] at 7) are both nearly perfect matches for the signature that appears on the Rider.

4

Later in 2025, Evans & Sons breached several of their contracts, presumably by way of non-performance or substandard performance. As set forth in a May 20, 2026 letter from EMC's Bond Claims Attorney, Anna Frederick, Defendants failed to complete at least eleven projects, and supplied "virtually no documentary support" and only "minimal explanation" for its failure to perform its obligations.[4] (EMC Letter [19-1] at 16–18.) Defendants do not dispute that they breached their contracts which, according to Plaintiff, led to "numerous claims" under the surety bonds and cost EMC $760,070.23. (PSOF [19] ¶¶ 18–20.) EMC claims that it expects to continue to incur losses, and that it is entitled under the indemnity agreements to indemnification and reimbursement from Defendants. (*Id.* ¶¶ 21, 23.)

Defendants have refused EMC's demands for reimbursement, resulting in this lawsuit. EMC's complaint was filed in this court on August 18, 2025, asserting an Illinois-law indemnity claim. (Compl. [1].) Because Plaintiff, a citizen of Iowa, and Defendants, each a citizen of Illinois, are fully diverse, jurisdiction is proper pursuant to 28 U.S.C. § 1332. (*See* Compl. [1] ¶¶ 1–5; Answer [11] ¶¶ 1–5.) The court set a discovery schedule and in January 2026, Plaintiff moved for summary judgment. The motion is fully briefed and, for the reasons explained here, is granted.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Polk v. Progressive N. Ins. Co.*, 171 F.4th 1001, 1004 (7th Cir. 2026) (citing FED. R. CIV. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In considering a motion for summary judgment, the court views the record, and draws all reasonable inferences, "'in favor of the party against whom the motion under consideration is made.'" *Hartnett v. Jackson Nat'l Life Ins. Co.*, 170 F.4th 605, 607 (7th Cir. 2026); *see also Charles Bich & Bruno Bich Tr. v. WW3 LLC*, 130 F.4th 623, 629 (7th Cir.

---

[4] The contents of this letter are not contested by Defendants.

2025). To survive, the nonmoving party must "provide specific material facts showing there is a genuine issue for trial." *37celsius Cap. Partners, L.P. v. Intel Corp.*, 163 F.4th 421, 426 (7th Cir. 2025).

## II.      Analysis

This case is a straightforward breach of contract claim premised on Defendants' failure to indemnify EMC. (Compl. [1] ¶¶ 22–34.) Because the court's jurisdiction over this case is premised on diversity of citizenship, the court applies Illinois contract law to the substantive issues. *See Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 751 (7th Cir. 2024).

The court notes, first, that the facts are largely undisputed. Neither Evans & Sons, nor the individual Defendants, dispute that they entered into the General Application and Agreement of Indemnity in 2002, that they repeatedly breached their construction contracts with their customers, or that they owe money to EMC. (*See* Opp'n [24] at 3 (not disputing liability).) In fact, Defendants' brief implicitly acknowledges that these three Defendants are liable, at least for some amount. (*See id.* (requesting discovery on "the issue of damages").) The only dispute in this case concerns the liability of the Trust. Defendants offer two primary arguments: first, they make a half-hearted attempt to argue that the Trust Rider was not signed; second, they argue that it is invalid for lack of consideration. Neither argument is persuasive.

Defendants contend that there is a genuine dispute of fact as to whether the Rider was in fact signed by the Trust's trustees. (Opp'n [24] at 2.) The court disagrees. As noted, the only evidence that Defendants have put into the summary judgment record is an affidavit from Mr. Evans, in which he claims that he does not recall signing the agreement, and was not in Illinois when the agreement was signed and notarized. On its face, this is not enough to survive summary judgment. For one, as a litany of cases from this District and elsewhere have recognized, claiming that one does not remember signing an agreement is different than unequivocally claiming one's signature was forged. As the court reads his affidavit, Mr. Evans does only the former. In Illinois,

6

parties are bound even by contracts that they do not remember; Mr. Evans's affidavit claiming poor memory, without more, thus does not create a genuine dispute of fact as to the validity of the contract.[5]  *Compare Jennings v. Ed Napleton Elmhurst Imps. Inc.*, No. 1:23-CV-14099, 2025 WL 461433, at *10 (N.D. Ill. Feb. 11, 2025) (holding that a statement that one "does not remember" signing an agreement is "not enough" to create a genuine dispute of material fact); *with Muhammad v. Dollar Tree*, No. 18 C 04192, 2020 WL 1530750, at *4 (N.D. Ill. Mar. 31, 2020) (denying summary judgment where Plaintiff "unequivocally denies ever receiving or signing" the contract at issue).  Significantly, Ms. Evans, who also signed the Rider in her capacity as co-trustee of the Trust, does not deny the validity of her signature.

Even an unequivocal denial (or accusation that EMC forged Mr. Evans's signature) might not be compelling.  The document appears to bear the signature of both Dean Evans and Donna Evans, both of them notarized by a licensed Illinois notary.  In Illinois, a "notary public's certificate of acknowledgment, regular on its face, carries a strong presumption of validity."  *Butler v. Encyclopedia Brittanica, Inc*., 41 F.3d 285, 294-95 (7th Cir. 1994) (citing *Witt v. Panek*, 408 Ill. 328, 331–32, 97 N.E.2d 283, 285 (1951)).  To overcome this presumption, a party seeking to invalidate a notarized signature must put forward clear and convincing evidence, from a disinterested witness, that the notarization is invalid.  *See id*.; *see also Forreston State Bank v. Diehl*, 2015 IL App (2d) 150384-U, ¶ 52; *Ashland Ave. Invs., LLC v. Marquette Nat'l Bank*, No. 14 C 07745, 2016 WL 9782006, at *3 (N.D. Ill. Apr. 29, 2016).  Defendants have not done so.  Far from clear and convincing testimony from a disinterested witness, Defendants have offered only

---

[5]     Likewise, Mr. Evans's statement that he and his spouse were in Hawaii at the time the contract was executed is similarly unpersuasive.  There is no requirement, in Illinois, that a party be located in Illinois when they sign a contract, and Evans does not explain why his location at the time of contracting is suggestive of non-validity.  *See* 5 ILCS 312/2-102(b)–(d) (allowing certain Illinois notaries to "conduct remote notarizations" via "audio-video communication").  In any event, the Trust has not offered any form of objective evidence (such as airplane tickets or an affidavit from a disinterested party) questioning the validity of the notary's attestation that the Evans's personally appeared before her and signed the document.

a vague statement from Mr. Evans, who has a direct financial stake in undermining the validity of the notarization. This is insufficient to defeat summary judgment.[6] *See Lenox Group, Inc. v. Just Ducky Ltd.*, No. 08 C 294, 2010 WL 1741676, *3 (N.D. Ill. April 29, 2010) (granting summary judgment where defendants failed to present clear and convincing evidence from a disinterested witness); *Hudson Ins. Co. v. DeGraf Concrete Constr., Inc.*, No. 19-CV-6445, 2021 WL 12305772, at *3 (N.D. Ill. Dec. 3, 2021) (noting that the testimony of an interested witness alone "cannot overcome the presumption of [the] signature's validity").

Second, Defendants claim that the Rider is invalid for lack of consideration. (Opp'n [24] at 2–3.) Defendants have not developed this argument in any detail, and the court is not persuaded. The General Agreement signed in 2002 sets out the conditions under which EMC would issue surety bonds, but imposes no obligation on EMC to do so. It is obviously reasonable for a surety to seek additional indemnitors later down the road as a condition for the continued issuance of surety bonds. Thus, Defendants received a benefit (the continued issuance of surety bonds) in exchange for the Trust's agreement to indemnify EMC. This is sufficient consideration as a matter of law.

For the reasons explained above, the court will enter summary judgment in favor of Plaintiffs. In their response brief, Defendants make one final request: that the court delay consideration of this summary judgment motion pursuant to FED. R. CIV. P. 56(d) to "allow defendant to take discovery on the issue of damages." The court notes that Rule 56(d) requires a party who seeks additional discovery to submit a declaration or affidavit explaining what facts are unclear at the time of the filing of the summary judgment motion. Defendants have not complied with this rule. The only exhibit in the record is Mr. Evans's affidavit, but that document

---

[6] Moreover, because a notary public "is vested with the authority of the state such that their 'act of notarization tends to prove the authenticity of the witnesses' signatures,'" the notary "assumes personal liability for the accuracy of his or her notarization." *Pawnee Leasing Corp. v. Mr. Munchies Food LLC*, No. 24-CV-00751, 2025 WL 1883573, at *4 (N.D. Ill. July 8, 2025). There is no evidence that Defendants have reached out to the notary to ask whether she has any basis to challenge the bona fides of the notarization.

does not adequately explain what information Defendants require in order to respond to the summary judgment motion. Defendants were parties to the construction contracts for which EMC seeks indemnification and are presumably aware of their contents. Out of an abundance of caution, however, the court will delay the entry of final judgment and afford both parties the opportunity to present evidence in support of their damages claim. If Defendants fail to dispute the veracity of EMC's claimed figures with evidence, the court will enter summary judgment in the full amount claimed by EMC.

## **CONCLUSION**

The motion for summary judgment [18] is granted. Plaintiff is directed to file, by August 10, 2026, an affidavit attesting to the amount of damages due in this case. If Defendants object to this figure, they may respond by August 24, 2025. Plaintiff's reply, if any, is due on August 31, 2026. The court will enter an appealable final judgment at that time.

ENTER:

Dated: July 10, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

9